UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| AVOCADOS PLUS, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MIKE JOHANNS, | ) | |
| Secretary of Agriculture, *et al.*, | ) | Civil Action No. 02-1798 |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE JEROME J. STEHLY AND | ) | |
| CHRISTINA M. STEHLY LIVING | ) | |
| TRUST OF NOVEMBER 30, 1999, *et al.*, | ) | |
| | ) | |
| Intervenor-Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiffs are seven importers of Hass avocados[1]—Avocados Plus, Inc.; LGS Specialty Sales, Ltd; J & K Produce, Inc.; J. Bonafede Company, Inc.; J.L. Gonzalez Produce, Inc.; La Hacienda Brands, Inc.; and Sonora Produce, Inc (collectively, "plaintiffs"). Defendants are Mike Johanns, Secretary of Agriculture; A.J. Yates, Administrator of the Agricultural Marketing Service; the U.S. Department of Agriculture; Robert Bonner, Commissioner of Customs and Border Protection; and the U.S. Customs Service (collectively, "defendants"). The Jerome J. Stehly and Christina M. Stehly Living Trust of November 30, 1999 and Charley Wolk

---

[1] Hass avocados is the variety of avocados that is the most popular for consumption in the United States.

(collectively, "intervenors") have intervened in support of the federal defendants.

Despite the long and interesting history of the litigation, the case has now been whittled down to a single question: Whether an internet survey is probative and reliable enough to warrant further discovery and a possible trial. If it is not, summary judgment must be granted in favor of defendants and intervenors. Because the court concludes the survey is not reliable or probative, an accompanying Order grants defendants' and intervenors' supplemental motions for summary judgment.

## BACKGROUND

As this is the fourth memorandum opinion issued in this action, the court assumes familiarity with the factual and procedural background. *See Avocados Plus, Inc. v. Veneman*, No. 02-cv-1798, Mem. Op. (D.D.C. Feb. 14, 2003) [dkt #28]; *id.* Mem. Op. (D.D.C. April 14, 2003) [dkt #38], *vacated and remanded by*, *Avocados Plus, Inc. v. Veneman*, 370 F.3d 1243 (D.C. Cir. 2004); *Avocados Plus Inc. v. Johanns*, 421 F. Supp. 2d 45 (D.D.C. 2006) [dkt # 87].

Plaintiffs challenge the Hass Avocado Promotion, Research, and Information Act of 2000, 7 U.S.C. §§ 7801 *et seq.* (the "Avocado Act"), alleging that it violates their First Amendment rights. Most and the most substantial of plaintiff's claims were definitively resolved against them in *Avocados Plus*, 421 F. Supp. 2d at 58, in which Judge Kessler relied heavily on a Supreme Court decision handed down while this litigation was ongoing, *Johanns v. Livestock Marketing Ass'n*, 544 U.S. 550 (2005). In *Livestock Marketing*, the Supreme Court construed legislation, colloquially known as the federal Beef Act, that was very similar to the Avocado Act, except that it applied not to the avocado industry but the beef industry. *See Avocados Plus*, 421 F. Supp. 2d at 50-51. There, individual beef suppliers and associations objected to a federal

assessment that would go to fund government-sponsored campaigns promoting beef consumption. *See Livestock Marketing*, 544 U.S. at 554-55. The challengers argued that by levying the fee, the federal government in effect forced them to fund speech with which they disagreed, in violation of the compelled speech doctrine. *See, e.g., Abood v. Detroit Bd. of Educ.*, 431 U.S. 209 (1977). The Supreme Court rejected this argument. The Court reasoned that such generic advertisements or campaigns did not compel speech at all but were rather "government speech" and hence subject to minimal judicial scrutiny. *Livestock Marketing*, 544 U.S. at 562. In light of *Livestock Marketing* and the almost identical facts and legislation of the present case, Judge Kessler held that the Avocado Act did not violate the First Amendment's speech or free-association clauses. *See Avocados Plus*, 421 F. Supp. 2d at 50-51, 54-55.

However, the *Livestock Marketing* Court left open the possibility of one, extremely narrow avenue for relief under the First Amendment: an as-applied challenge to the Beef Act. To establish an as-applied challenge to the Beef (or Avocado) Act, a plaintiff must show that the individual advertisements funded by the government were actually being attributed to the specific beef supplier that objected to being associated with the pro-beef message. *Livestock Marketing*, 544 U.S. at 565-66. As Justice Thomas explained in his concurring opinion, "if the advertisements associated [the government's] pro-beef message with either the individual or organization respondents, then respondents would have a valid as-applied First Amendment challenge," because "the government may not . . . associate individuals or organizations involuntarily with speech by attributing an unwanted message to them." *Id.* at 568; *see also Avocados Plus*, 421 F. Supp. 2d at 56-57.

In the case *sub judice*, the avocado importer plaintiffs have sought to revive their lawsuit

after *Livestock Marketing* by casting their challenge as an as-applied First Amendment claim based upon the attribution of the government's pro-avocado message to the individual plaintiffs—despite the fact that none of the government's advertisements mention the plaintiffs. In support of their as-applied challenge, plaintiffs have submitted an internet survey conducted by their expert purporting to demonstrate that significant portions of the general populace attribute to them the government's pro-avocados message. As Judge Kessler explained:

> Given that Avocado Act promotions make no reference to individual avocado growers or importers, the Court has grave doubts that Plaintiffs can succeed on their as-applied claim. *Livestock Marketing* makes clear that a generic tagline, like those used in Avocado Act promotions, without more, is insufficient to raise the possibility of attribution. *See Livestock Marketing*, [544 U.S. at 566]. The fate of Plaintiffs' as-applied claim therefore turns on whether their survey, which purports to demonstrate that attribution occurs despite the generic nature of the promotions, even raises a concrete issue over a material fact in dispute which would warrant opening up this case to full-blown discovery and a possible trial.
>
> To survive the pending summary judgment Motions, Plaintiffs must demonstrate that the survey provides enough evidence that a reasonable factfinder could return a judgment in their favor. The only evidence in this record is Plaintiffs' survey. Accordingly, the Court must make a preliminary determination that the survey is reliable and trustworthy . . . .
>
> . . . The survey first required respondents to look at an Avocado Act promotion and then to read a complete list of Plaintiffs. Only then did respondents proceed to the question: "[D]o you believe that any of these companies was the source of the advertisement you just saw". See Pls.' Mot. for Summ. J., Ex. B, Klein Aff. ¶ 11. This format seems unnecessarily suggestive, and Defendants may be correct that it was "the survey itself, not the advertisement, that planted the seed of a possible connection between the advertisement and [P]laintiffs." Defs.' Opp'n at 14. A less suggestive survey might have yielded results that are significantly different, and significantly less favorable to Plaintiffs.

> Consequently, the Court is far from satisfied that the survey is reliable enough to enable a reasonable factfinder to find in Plaintiffs' favor on their as-applied claim.

*Avocados Plus*, 421 F. Supp. 2d at 57. Despite her skepticism, Judge Kessler reopened discovery to allow the government and intervenors to depose plaintiffs' survey designer and to submit affidavits in opposition using their own survey experts that would explain why or whether the internet survey was reliable enough to enable a trier of fact to render a judgment in plaintiffs' favor. *Id.* Having completed their deposition of the survey designer, the government and intervenors filed supplemental motions for summary judgment, reiterating their position that the internet survey cannot sustain the cause. Judge Kessler referred these motions to me on December 22, 2006.

## DISCUSSION

The standard for granting a motion for summary judgment is well known and need not be repeated here. The only evidence plaintiffs proffer in support of their claim and which could be used by a reasonable trier of fact to find in their favor is the internet survey. As Judge Kessler has already explained, the court has "grave doubts" that the survey is by itself sufficient to sustain the cause. The deposition of plaintiffs' survey designer has done nothing to alleviate those doubts.

To begin, the Avocado Act advertisements are *generic*; they never mention any avocado importer by name and promote only "Hass avocados from Mexico." This alone is probably a sufficient basis for the court to find that no reasonable trier of fact could find that the advertisement is attributable to these individual plaintiffs, as required by *Livestock Marketing*. That case made clear that the tagline "America's Beef Producers" was "not sufficiently specific

to convince a reasonable factfinder that any particular beef producer, or all beef producers, would be tarred with the content of each trademarked ad." 544 U.S. at 566. The tagline here is arguably even more generic, because it identifies *no entity* at all—neither importers nor producers—but merely a variety of avocados from Mexico. The teaching of *Livestock Marketing* likely forecloses plaintiffs' claim that "Hass avocados from Mexico" could "convince a reasonable factfinder that any particular [avocado importer], or all [avocado importers], would be tarred with the content of each trademarked ad." *Id.*

In any event, the survey itself is fatally flawed. First, plaintiffs own expert admitted that the ad shown to the survey respondents was not attributed to anyone specifically. Def. Ex. A, Klein Dep., at 86-87. He also admitted that it was unlikely that any of the respondents would have identified, unaided by the design of the survey, any of the plaintiffs as sponsors of the ad. *Id.* Second, plaintiffs declined to provide any underlying documentation about the survey, such as their expert's files documenting specific data on the age, distribution, income, occupation, and gender of the respondents, or even the actual screenshots of what information was actually shown to the respondents. *Id.* at 40-50, 100-17. Whether plaintiffs were *required* to provide such information is beside the point; they understood from the court's prior memorandum opinion and order that they needed to dispel the "grave doubts" the court had concerning the survey, and refusing to provide relevant raw data does not inspire confidence in their cause. *See also* Def. Ex. B, Presser Decl., at 2-4.

Finally, nothing in the deposition or other supporting evidence submitted altered the court's prior judgment that the format of the question concerning attribution (the question on which plaintiffs rely most heavily in support of their claim)—juxtaposing an ad about avocados

from Mexico and then showing a list of avocado importers consisting of *only* the plaintiffs—was "unnecessarily suggestive," and that likely "the survey itself, not the advertisement, . . . planted the seed of possible connection between the advertisement and plaintiffs." *Avocados Plus*, F. Supp. 2d at 57.

It is of course the proponent's "burden [to] establish[] that the pertinent admissibility requirements are met by a preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171 (1987)." Fed. R. Evid. 702, Advisory Committee Notes, 2000 Amendments. In view of the record now before the court, I find that plaintiffs have failed to do so. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999) (a district judge has the discretionary authority to determine the reliability of expert testimony in light of the particular facts and circumstances of the particular case); *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993) (trial judges are charged with the responsibility of acting as gatekeepers to exclude unreliable expert testimony).

**CONCLUSION**

For the foregoing reasons, I find that the internet survey is neither reliable nor trustworthy as expert evidence to demonstrate a *Livestock Marketing* attribution claim; and as that survey is the sole evidence upon which plaintiffs rely to sustain their as-applied challenge, I will grant defendants' and intervenors' motions for summary judgment.

An accompanying Order implements the decisions announced herein.